UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RUDY STANKO, a/k/a "Butch" Stanko, <br><br> Plaintiff, <br><br> vs. <br><br> OGLALA SIOUX TRIBE, as known as the Tribe; VENNESIA RODRIQUEZ, individually and in her official capacity as a guard at the Kyle jail; CHARLES HUNTER, individually and in his official capacity as an Oglala cop; JODIE GARNETTE, individually and in her official capacity guard at the Kyle jail; TATEWIN MEANS, individually and in her official capacity as an Indian counselor; JOHN HUSSMAN, individually and in his official capacity as a medicine man/judge of the Oglala Sioux Trial Court; and Defendants IX through 6X, individually, will be named after discovery, <br><br> Defendants. | CIV. 17-5008-JLV <br><br><br> ORDER |

**INTRODUCTION**

Plaintiff Rudy Stanko filed a ten-count complaint against the defendants. (Docket 1). Defendants Oglala Sioux Tribe ("OST" or the "Tribe"), Vannesia Rodriguez, Charles Hunter, Jodie Garnette, Tatewin Means, and John Hussman (jointly the "Individual Tribal Defendants") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon

which relief may be granted. (Docket 7). Mr. Stanko resists the defendants' motion. (Dockets 9 & 11). For the reasons stated below, the defendants' motion to dismiss is granted.

## ANALYSIS

The Tribe is a federally recognized tribe. Wilson v. Bull, No. CIV. 12-5078, 2014 WL 412328, at *3 (D.S.D. Feb. 3, 2014). Ms. Rodriquez, Mr. Hunter and Ms. Garnette are officers serving in the Oglala Sioux Tribe Corrections Department, which is a department within the tribal government. (Docket 1 ¶¶ 10-12 at p. 3). At the time of the filing of the complaint, Ms. Means was the Attorney General of the Oglala Sioux Tribe and Mr. Hussman was a judge of the Oglala Sioux Tribal Court system. (Docket 8 at p. 5). The Oglala Sioux Tribal Court is a branch of tribal government.

The defendants' asserted grounds for dismissal are summarized as follows:

A.  Pursuant to Rule 12(b)(1), the court lacks subject matter jurisdiction over the Tribe or the Individual Tribal Defendants. This portion of the motion is broken down into the following:

    1.  OST possesses tribal sovereign immunity and is immune from suit;

    2.  The doctrine of tribal sovereign immunity extends to the claims against the Individual Tribal Defendants in their official capacities.

B.  Pursuant to Rule 12(b)(6), the complaint fails to state a claim upon which relief can be granted. This portion of the motion is broken down into the following:

    1.  OST is not a state or Territory for purposes of 42 U.S.C. § 1983;

2. The Individual Tribal Defendants were not acting under color of state law as required by 42 U.S.C. § 1983;

3. The complaint's common law claims do not arise under federal law, but rather tribal law; and

4. The complaint's common law claims do not meet the diversity jurisdiction requirements of 28 U.S.C. § 1332.

(Dockets 8 & 10). For these reasons the defendants seek dismissal of the complaint with prejudice. (Docket 7).

The assertion of tribal "[s]overeign immunity is a jurisdictional issue . . . ." v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir. 1995). If the Tribe and the Individual Tribal Defendants "possess sovereign immunity, then the district court [has] no jurisdiction to hear [plaintiff's claims]. Id. For this reason, the court will first address the defendants' Rule 12(b)(1) motion.

I. RULE 12(b)(1) MOTION TO DISMISS

Rule 12 provides in part that "a party may assert the following defenses by motion: . . . lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (internal citation omitted). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion [to dismiss] is successful if the plaintiff fails to allege an element

necessary for subject matter jurisdiction." Id. (internal citation omitted). While considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction the court must "accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." Great Rivers Habitat Alliance v. Federal Emergency Management Agency, 615 F.3d 985, 988 (8th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

"The burden of proving federal jurisdiction, however, is on the party seeking to establish it, and this burden may not be shifted to the other party." Great Rivers Habitat Alliance, 615 F.3d at 988 (internal quotation marks and brackets omitted). "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction . . . ." Arkansas Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009).

Because Mr. Stanko is proceeding *pro se*, his pleading must be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove

4

no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Plaintiff's complaint cites 28 U.S.C. §§ 1331, 1343 and 2680 and 42 U.S.C. § 1983 as the bases for the court's jurisdiction. (Docket 1 at pp. 1-3). Plaintiff's response to defendants' motion to dismiss relies on § 1983 for jurisdiction. (Docket 9). Viewing plaintiff's *pro se* filings in a less stringent light, he has not identified a waiver of sovereign immunity.

The essence of Mr. Stanko's complaint against the Tribe and the Individual Tribal Defendants is summarized as follows. On September 22, 2016, Mr. Stanko was stopped by OST Law Enforcement Officer Jesse Red Wine for speeding. (Docket 1 ¶ 15). Officer Red Wine informed Mr. Stanko there were two OST arrest warrants outstanding. Id. ¶ 16. Mr. Stanko informed Officer Red Wine that the tribal court had no jurisdiction over him and he refused to waive jurisdiction by appearing in tribal court. Id. ¶ 17. Officer Red Wine did not arrest Mr. Stanko, who drove away. Id. ¶ 18.

On October 28, 2016, OST Tribal Court Judge John Hussman imposed a fine and court costs against Mr. Stanko for the ticket issued by Officer Red Wine. Id. ¶ 20. On the same day, Tribal Court Judge Hussman issued an arrest warrant for Mr. Stanko but with a credit of $100 per day for each day of incarceration. Id. ¶ 21.

On January 21, 2017, Mr. Stanko was arrested by OST Tribal Officer Charles Hunter "1/2 mile north of National Grassland boundary near the White

River on US/BIA Highway 27 and taken to the Kyle Police Department jail." Id. ¶ 23. Officer Hunter advised Mr. Stanko that the officer had been ordered by "Tatewin Means, his counselor, to arrest people of White descent." Id. ¶ 27. Mr. Stanko alleges Officer "Hunter fraudulently returned the service as stating he took [Mr. Stanko] before the Oglala Sioux Tribal Court, when he took [Mr. Stanko] to an Indian jail on January 21, 2017." Id. ¶ 29. OST Tribal Jail Officers Ms. Garnette, Ms. Rodriquez and Mr. Hunter told Mr. Stanko they "would not take . . . cash as bail money, and insisted on a money order." Id. ¶ 31. Officer "Hunter pulled a gun . . . pointed at [Mr. Stanko]" and told Mr. Stanko "to put his hands on the wall and strip naked." Id. ¶¶ 33-34. While in that position, Officer Hunter assaulted Mr. Stanko by kicking him "several times in the thigh until he was black and blue." Id. ¶¶ 35-36. Officers Garnette and Rodriquez assisted Officer Hunter in assaulting Mr. Stanko. Id. ¶ 37. The three officers then stole $700 from Mr. Stanko's wallet. Id. ¶ 38. The three officers placed Mr. Stanko in jail, in what Mr. Stanko describes as "the hole." Id. ¶ 39. Mr. Stanko remained in isolation in the jail for some unstated period of time. Id. Mr. Stanko seeks money damages for past and future pain and suffering, reimbursement for his cost and time for asserting these constitutional claims and a "[c]ontingency enhancement premium . . . because of the high risk of litigation of civil rights grievances." Id. at pp. 7-8.

Mr. Stanko's claims against the Tribe and the Individual Tribal Defendants must be separately analyzed.

OGLALA SIOUX TRIBE

"[I]n enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law."[1] Will v. Michigan Department of State Police, 491 U.S. 58, 66 (1989). "It is well established that Indian tribes possess sovereign immunity from suit that existed at common law." Rupp, 45 F.3d at 1244 (referencing Rosebud Sioux Tribe v. A & P Steel, Inc., 874 F.2d 550, 552 (8th Cir. 1989)). "The common law sovereign immunity possessed by the Tribe is a necessary corollary to Indian sovereignty and self-governance." Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, 476 U.S. 877, 890 (1986). "[B]ecause of the peculiar 'quasi-sovereign' status of the Indian tribes, the Tribe's immunity is not congruent with that which the Federal Government, or the States, enjoy. . . . And this aspect of tribal sovereignty, like all others, is subject to plenary federal control and definition." Id. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived immunity." Kiowa Tribe of Okla. v. Manufacturing Techs., Inc., 523 U.S. 751, 754 (1998).

"The Tribe may waive this immunity." Rupp, 45 F.3d at 1244. "A waiver of sovereign immunity may not be implied, but must be unequivocally expressed

---

[1] Mr. Stanko erroneously argues "[t]he Fort Laramie Treaty of 1868, which the Indians are always referring to, was abrogated by Congress in 1877. Indians are a defeated nation and Congress was given the power to regulate Indian Tribes in Article 1, § 8, cl. 3 of the US Constitution." (Docket 9 at p. 9 n.5). See, i.e., Sioux Tribe of Indians v. United States, 316 U.S. 317 (1942); United States v. Sioux Nation of Indians, 448 U.S. 371 (1980); and South Dakota v. Bourland, 508 U.S. 679 (1993).

by either the Tribe or Congress." Id. (referencing Rosebud Sioux Tribe, 874 F.2d at 552). "While sovereign immunity has long been enjoyed by Indian tribes, such immunity may be waived, but the waiver must be unequivocally expressed, and may not be implied." Rosebud Sioux Tribe, 874 F.2d at 552 (referencing Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); Weeks Construction, Inc. v. Oglala Sioux Housing Authority, 797 F.2d 668, 670-71 (8th Cir. 1986); American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe, 780 F.2d 1374, 1377-81 (8th Cir. 1985)). "Tribes possess immunity because they are sovereigns predating the Constitution." Rupp, 45 F.3d at 1244 (referencing American Indian Agricultural Credit, 780 F.2d at 1378).

"One method in which express waiver may be made is by virtue of a provision allowing the tribe 'to sue or be sued,' found in the tribe's corporate charter." Rosebud Sioux Tribe, 874 F.2d at 552. The Tribe's Constitution does not contain a "to sue or be sued" provision. See Docket 8-1. In 2001, the Tribe specifically reserved its right to assert tribal sovereign immunity in the absence of consent by the Tribe and the United States. (Docket 8-2). The Tribe reaffirmed its tribal sovereign immunity in 2015. (Docket 8-3).

Congress has not expressly authorized suit and has not waived the Tribe's sovereign immunity. Mr. Stanko has not presented any evidence the Tribe waived its sovereign immunity so to be subject to this litigation. The Tribe is immune from suit and the complaint must be dismissed with prejudice as to the

Tribe. Santa Clara Pueblo, supra; Kiowa Tribe of Okla., supra; Rosebud Sioux Tribe, supra.

INDIVIDUAL TRIBAL DEFENDANTS

OFFICIAL CAPACITY CLAIMS

The Tribe's immunity extends to its officers acting in their official capacities. "Defendants in an official-capacity action may assert sovereign immunity." Lewis v. Clarke, 137 S. Ct. 1285, 1291 (2017). Plaintiff's claims against the Individual Tribal Defendants in their official capacities function as a suit against the Tribe. Id. at 1290-91 ("lawsuits brought against employees in their official capacity represent only another way of pleading an action against an entity of which an officer is an agent, and they may also be barred by sovereign immunity.") (internal quotation marks and citation omitted).

Mr. Stanko's claims against the Individual Tribal Defendants in their official capacities fail as a matter of law. These claims are against the Tribe, which is immune from suit. The complaint against the Individual Tribal Defendants in their official capacities must be dismissed with prejudice.

## II. RULE 12(b)(6) MOTION TO DISMISS

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Two "working principles" underlie Rule 12(b)(6) analysis. See Iqbal, 556 U.S. at 678. First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint. See id.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted). The court does, however, "take the plaintiff's factual allegations as true." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 678 (citation omitted). The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594.

When the court states "that a pro se complaint should be given liberal construction, [it] mean[s] that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004). A *pro se* litigant must still set forth a claim "in a manner which, taking the pleaded facts as true, states a claim as a matter of law." Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981). "(A) complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted)). "Where the allegations show on the face of the complaint there is some insuperable bar to relief,

10

dismissal under Rule 12(b)(6) is appropriate." Benton v. Merrill Lynch & Co., Inc., 524 F.3d 866, 870 (8th Cir. 2008).

## INDIVIDUAL TRIBAL DEFENDANTS

INDIVIDUAL CAPACITY CLAIMS

Mr. Stanko's complaint sues the Individual Tribal Defendants in their individual capacities under 42 U.S.C. § 1983. (Docket 1 at p. 2). Mr. Stanko alleges the Individual Tribal Defendants violated his rights under 42 U.S.C. § 1983, by violating his Fourth Amendment, Eight Amendment and Fourteenth Amendment rights. Id. at pp. 6-7.

The Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

The complaint alleges violations of the Fourth, Eighth and Fourteenth Amendment of the United States Constitution as the basis for the § 1983 claim. (Docket 1 at pp. 6-7). "As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."

Santa Clara Pueblo, 436 U.S. at 56. The Supreme Court "held that the Fifth Amendment did not operate upon the powers of local self-government enjoyed by the tribes." Id. (citing Talton v. Mayes, 163 U.S. 376, 384 (1896) (internal quotation marks and brackets omitted). The Supreme Court also recognized that its holding in Talton has been "extended . . . to other provisions of the Bill of Rights, as well as the Fourteenth Amendment." Id. (references omitted). For this reason, Mr. Stanko's § 1983 allegations fail to state a claim upon which relief can be granted.

Mr. Stanko's § 1983 claims fail for another reason. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Parker v. Boyer, 93 F.3d 445, 447-48 (8th Cir. 1996) (citing West v. Atkins, 487 U.S. 42, 49 (1988) (emphasis added). The conduct at issue must "be fairly attributable to the State" for liability under § 1983 to exist. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

There is no allegation in the complaint that the Individual Tribal Defendants were acting under color of state law.[2] It is also improper for the

---

[2]Mr. Stanko's argument is that "[t]he United States District Court for the Western District of South Dakota is under the color of South Dakota law. . . . The United States District Court for the Western District of South Dakota is the proper venue for suing Indians for violation of the constitution, civil rights and robbery." (Docket 9 at p. 13). This argument is without merit because the United States District Courts were created by the Constitution of the United

court to infer from the complaint that the Individual Tribal Defendants were acting under color of state law. Section 1983 does not provide jurisdiction for plaintiff's claims against the Individual Tribal Defendants. Jones v. United States, 16 F.3d 979, 981 (8th Cir. 1994).

Mr. Stanko's complaint alleges a cause of action under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, ("FTCA"). (Docket 1 ¶ 6). "The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976). The FTCA specifically restricted jurisdiction of the federal district court to those "claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his . . . employment, under circumstances where the United States, if a private person, would be liable to the claimant . . . ." 28 U.S.C. § 1346(b)(1). An allegedly aggrieved party may not pursue an FTCA claim against an individual. Id.

## ORDER

Based on the above analysis, it is

---

States and federal laws and not under the laws of the state of South Dakota. See Article III, s. 1, of the Constitution of the United States.

ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction (Docket 7) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) as it relates to the Oglala Sioux Tribe is dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to Vannesia Rodriguez, Charles Hunter, Jodie Garnette, Tatewin Means, and John Hussman in their official capacities is dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to Vannesia Rodriguez, Charles Hunter, Jodie Garnette, Tatewin Means, and John Hussman in their individual capacities is dismissed without prejudice.

Dated September 20, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE